JOHN H. WILLIAMS, Appellant, *v.* ST. LOUIS, IRON MOUNTAIN, AND SOUTHERN RAILWAY COMPANY ET AL., Respondents.

### December 9, 1879.

1. Where, after a replevin bond has been given, the defendant disclaims any interest in the property, and another is, on motion, substituted as defendant, the latter cannot have judgment against the plaintiff and his sureties on the bond.
2. The statute does not give an attachment against the property of a married woman; and a sale under such an attachment passes no title.
3. Judicial sales may be collaterally attacked on jurisdictional grounds.

APPEAL from the St. Louis Circuit Court.
*Reversed and remanded.*

J. D. JOHNSON, for the appellant: No title passes at a sale under an attachment against the property of a married woman. — *Decker* v. *Lidwell*, 3 Mo. App. 586; *Gage* v. *Gates*, 62 Mo. 417. A general judgment against husband and wife on a note executed by the wife is void. — *Wernecke* v. *Wood*, 58 Mo. 357; *Caldwell* v. *Stephen*, 57 Mo. 589; *Lincoln* v. *Rowe*, 64 Mo. 618.

CHARLES D. YANCEY and ROBERT CRAWFORD, for the respondent Bugg: Bugg was properly made party defendant, that he might propound his interest. — *Volke* v. *Cerré's*

*Administrator*, 36 Mo. 575 ; *White* v. *Van Houten*, 51 Mo. 577 ; Wag. Stats. 1000, sect. 5 ; *The State* v. *Sanderson*, 54 Mo. 303.   The court ruled correctly that Bugg, at his option, was entitled to claim value of the property. — *Schulenberg* v. *Boothe*, 65 Mo. 475 ; *Tippock* v. *Briant*, 63 Mo. 580 ; *White* v. *Graves*, 68 Mo. 218.   Appellant, not excepting to any evidence, really asks this court to sit as a trial court, not as an appellate court ; and that, too, without having an instruction to point out to it the theory of his case. — *The State* v. *Farmer*, 54 Mo. 439 ; 1 Pat. Dig. 35, sects. 268, 269.

HAYDEN, J., delivered the opinion of the court.

The plaintiff brought this action of replevin against the defendant company and two persons, but the defendants thus sued, it seems, claimed no interest in the property. The lumber in controversy, though found in the possession of the defendant company, was claimed by one Bugg, who, on his motion, was made a defendant, filed an answer, and became the party resisting.   Upon the trial, the plaintiff made out a *prima facie* case.   As the foundation of his title, Bugg introduced the record of a suit which had been pending in Wayne County, Missouri, being the case of *Bugg* v. *Leah Cutler and R. Cutler*, her husband.   From this record it appears that the suit was brought upon bills of exchange executed by Leah Cutler, the wife of her co-defendant ; that an attachment was issued in the case upon an affidavit alleging that Leah Cutler was about to convert her property, etc. ; that this writ directed the sheriff to attach the property of Leah Cutler and R. Cutler, and was levied on the lumber in controversy ; that pending this suit the lumber was sold under the attachment, and at this sale Bugg became the purchaser, and received the property from the sheriff.   It further appeared that during this proceeding, and before such sale, the plaintiff in the case at bar filed in the attachment suit an interplea, in which he claimed this

lumber as his property, but afterwards, and before the determination of the suit, withdrew this interplea; that in April, 1878, judgment was rendered in the attachment suit against both Leah Cutler and R. Cutler for the amount sued for, which judgment was by consent; and that, by order of court, the proceeds of the sale of the lumber were applied to the judgment.

The court below found the property to be of the value of $262.20, assessed damages, and adjudged that the defendant Bugg recover of the plaintiff and his sureties the property in controversy; or, at his election, that the defendant recover of the plaintiff and his sureties the said sum and damages, etc. The defendant elected to recover the value.

It is obvious that this judgment cannot stand. The statutory bond given by the plaintiff was given to the three defendants sued, and Bugg's name does not occur in it, he having been made a defendant long after the bond was given. Although the statute permits and provides for what is equivalent to a summary proceeding where the plaintiff gives bond for the prosecution of the action and return of the property, and such return is adjudged, yet it is obvious that no such judgment ought to be given unless an action would lie in favor of the defendant for whom judgment is given. The mere fact that judgment may go without a distinct suit ( *White* v. *Van Houten*, 51 Mo. 577 ) does not dispense with the rules of law, and enable a stranger to the bond to recover upon it; nor does the fact that a new party defendant is made, enable such party to recover from sureties who never entered into any obligation to such a person.

Where a defendant in whose possession the property is, is sued in replevin, and disclaims any interest, and the party claiming possession appears and asks to be made a defendant, it is common practice to grant him permission to defend. To allow him to become a defendant avoids circuity of action, and there is no objection to this practice.

*Vallé* v. *Cerré*, 36 Mo. 585. But, as a matter of course, if the party claiming the property and demanding its return takes no steps to procure a bond on which he can legally recover, there can be no judgment in favor of such defendant against sureties, as provided in the twelfth section of the Replevin Act.

If the title of Bugg depended upon the validity of the final judgment against Leah Cutler and her husband, as now brought in dispute, it would be a serious question whether Bugg does not make out a good title as against the present plaintiff. It is, indeed, often said that a judgment against a married woman is a nullity, but it is impossible to reconcile such doctrine with well-established rules of law. Such sayings are mostly *dicta*, and must be considered in reference to the facts in the cases. The present case show the error of such sweeping assertions. Here was no judgment by default, nor is there any question here as to the power of a married woman to appear by attorney. Husband and wife appeared, waived the defence of the coverture of the wife, and by consent judgment was rendered against both. The two had ample opportunity to plead the coverture and to appeal, and on appeal have the error corrected by which an erroneous judgment was rendered, unless, indeed, prevented by their own act in consenting. Why, then, should this judgment be an exception to the rule that a judgment rendered by a court having jurisdiction, and not procured by fraud, is, though erroneous, binding on the parties to it, if unreversed and unappealed from? Or why, in favor of the defendants in such judgment, or any party to the proceeding, should the well-settled rule be disregarded, that it is only in favor of a party who could not bring writ of error to reverse a judgment that such judgment can be shown to be erroneous in a collateral proceeding? It is only by confounding mere questions of form and procedure with questions of jurisdiction that judgments against married women can be pronounced

nullities, as a rule.   Here the court had every element of jurisdiction necessary to render a final judgment in the main suit; and a change in the pleadings and methods of procedure would have enabled the court correctly to have subjected this property — if, as there is testimony tending to show, it was the separate property of the married woman — to the obligations sued on.   Nor is it true that those obligations were merely non-enforceable during coverture.   If the husband had died, the maker of those obligations might, under the decision of the Supreme Court of this State, have then been sued upon them at common law, and his property, if she had it, levied upon in satisfaction of the judgment against her.   *King* v. *Mittalberger*, 50 Mo. 182.

But the question here is not as to the effect of the final judgment in the suit brought by Bugg, but as to the effect of the sale under the attachment.   If the court had no jurisdiction of the attachment proceeding when the order of sale was made and executed, it could not acquire jurisdiction of such proceeding by virtue of what happened when final judgment was rendered.   Where a statute confers upon a court of general jurisdiction common-law or chancery powers, the presumption of jurisdiction exists, as in case of the ordinary exercise of such powers; but where a court of general jurisdiction is invested by statute with special powers, to be exercised, not according to common-law or chancery procedure, but in an extraordinary manner and according to a special and statutory method, there the proceedings will, as in case of courts of special jurisdiction, be invalid if they are not according to the statute, and the jurisdiction does not affirmatively appear.   Drake on Attach., sect. 85.   Our Attachment Act provides that in any court having competent jurisdiction the plaintiff in any civil action may have an attachment against the property of the defendant, in specified cases. But the statute does not give an attachment against the

property of a married woman, or repeal the common law so far as to enable a creditor, by this extraordinary method, to sue a married woman on her obligations during coverture. The issue of the writ is an exercise of special jurisdiction, and if it is issued in aid of a cause of action non-enforceable at common law, the power of the court, as prescribed by the statute, is exceeded. Here the petition and affidavit showed on their face that the court had no jurisdiction to issue the writ; and in fact the wife, as sued, was not a subject of the Attachment Act. Thus, whether a party or not, the plaintiff was not bound by the proceeding. If the sale gave no title, he was not bound to follow its proceeds in court, but was at liberty to pursue his own property, the lumber. It was for the then plaintiff and present defendant, Bugg, who was a purchaser at a judicial sale, to inquire into the jurisdiction of the court, or take the consequences of his negligence. He was bound to know the law that upon a question of jurisdiction the validity of judicial action may always be collaterally attacked.

The judgment is reversed and cause remanded, to be proceeded with according to this opinion. All the judges concur.